Samuel Pierce
5-8-9-103 Towa, Adachi City
Tokyo, Japan 120-0003
Telephone:   (216) 215-0314
Email:       pierce2015@lawnet.ucla.edu

# UNITED STATES DISTIRCT COURT

## DISTRICT OF MAINE

| | |
|---|---|
| Samuel Madigan Pierce, | |
| Plaintiff, | DOCKET NO.: |
| v. | |
| Thomas Madigan Pierce, | **CIVIL ACTION** |
| Andrew Neale Pierce, | **COMPLAINT** |
| H.M. Payson & Co., | |
| Defendants. | **JURY TRIAL DEMANDED** |

## **INTRODUCTION**

1.  Plaintiff Samuel Pierce engaged in protected First Amendment activities to raise matters of public concern related to Russian intelligence operations and the war in Ukraine as described further below, and further engaged in investigation of the identities of the biological parents of himself and the persons raised purportedly as the Plaintiff's full-blooded siblings despite visually seeming to belong to an entirely different ethnic group. These activities upset the Defendants who sought to silence the Plaintiff for their own personal and financial purposes.

2. The defendants devised a kidnapping scheme very similar (though worse in that Plaintiff was also physically assaulted) to the one orchestrated by O.J. Simpson at the Palace Station in Las Vegas for which a prison sentence of a decade was served.   Thomas Madigan Pierce, using the resources of H.M. Payson of which he was Chairman of the Board at all times relevant to this complaint and seeking to advance the pecuniary interests of H.M. Payson, induced Plaintiff to enter a hotel room where Plaintiff was falsely imprisoned under the false premise that Plaintiff would receive banknotes i.e., cash.   After Plaintiff managed to escape from the hotel room where Plaintiff was confined, Defendants and their co-conspirators continued to physically restrain and physical assault the Plaintiff.   Local police were called and rescued Plaintiff from the kidnapping after rejecting the Defendants' outrageous claims of methamphetamine use and other false claims made in an attempt to have Plaintiff wrongfully detained.

3. As part of the scheme, the Defendants contacted Plaintiff's supervisor at his then-employer

COMPLAINT

Sughrue Mion who resides on the premises of the Embassy of Iran and is a well-known extremist for Palestinian causes.   Defendants falsely claimed Plaintiff was using methamphetamines even though Plaintiff has never done so in his life and does not even drink coffee, as Defendants knew well.   Defendants successfully sought to prevent Sughrue Mion from paying Plaintiff monies earned by Plaintiff and which were scheduled to be paid 3 days before the kidnapping, in order to induce Plaintiff to travel to the hotel where the kidnapping occurred.   As a result of these completely false allegations, Sughrue Mion terminated its relationship with Plaintiff.   Plaintiff seeks compensation for the significant damages defendants' outrageous conduct has caused.

## THE PARTIES

4. Plaintiff is a Citizen of Japan.

5. Thomas Madigan Pierce is a Citizen of Maine.

6. Andrew Neale Pierce is a Citizen of Maine or a Citizen of California.

7. H.M. Payson & Co. is a corporation established under the laws of the State of Maine.

## JURISDICTION AND VENUE

8. Plaintiff is seeking damages well in excess of $75,000 and does not share state citizenship with any defendant named in this lawsuit.

9. Therefore, jurisdiction is vested by 28 U.S.C. § 1332(a) (diversity).

10. Venue is appropriate because a substantial portion of the events giving rise to this complaint occurred in this judicial district and because one or more of the Defendants can be found in this judicial district.

## FACTUAL ALLEGATIONS

11. The loss of Plaintiff's employment due to the Defendant's conduct in the instant case was the second time in 7 months Plaintiff had lost lucrative employment due to outrageous conduct.   The first loss of employment occurred from the largest law firm in Japan, TMI Associates, in apparent retaliation after Plaintiff sued officials in the State of Hawaii over an apparent kickback scheme to impose costly surplus and conflicting requirements on travelers from Japan to the United States.   It was later revealed that TMI Associates, Japan, and the State of Hawaii were likely working in a coordinated operation which had been preplanned to induce Plaintiff to sue; thus, there was likely no retaliation in fact.

12.   The likely coordination was revealed when, in March of this year, Plaintiff's financial accounts in Japan were mysteriously debited and credited apparently by Japanese and/or other foreign intelligence services in what was an apparent attempt to simulate the failures of Japan's largest commercial banks.   Japanese and/or other foreign intelligence services advised Plaintiff to open an account at a government bank as a safeguard. Japanese intelligence services further advised Plaintiff that Japanese intelligence services believe Korea should be considered part of Japanese territory.

13. In 2009 a Russian citizen classmate of Plaintiff's at Wharton whose family is very closely connected to the KGB and its successor agencies took a picture taken while

COMPLAINT

Plaintiff was undressing and the photograph was sent by Russian citizens to a woman Plaintiff has known very well since Plaintiff was a toddler and concededly will always be madly in love with.   Plaintiff was extremely upset by this incident which Plaintiff obviously had nothing to do with causing.   The FBI contacted Plaintiff to threaten Plaintiff with arrest because in the FBI's analysis "it didn't look like [Plaintiff] was tied down in the picture".   This absurd, inhumanely cruel, and degrading investigation has of course not been forgotten by Plaintiff and was also not forgotten by Russian intelligence services.

14. Plaintiff has also known Tiger Woods since Plaintiff was a toddler.   Last year on the birthday of the woman whom was sent the photograph by the Russian citizens, Tiger Woods incurred injuries consistent only with hard braking during the collision of his vehicle to his right (brake) leg in an automobile crash in which police found Mr. Woods was not intoxicated yet police did not try to dig further as to why no brake input at all was recorded during the collision in which the vehicle sped for a considerable distance out of travel lanes, across a median, and into the woods.   The only explanation is that the vehicle was tampered with and it seems Russian intelligence is the only conceivable culprit.

15. This year on the birthday of the woman sent the photograph, Russia invaded Ukraine.   It is plain that the date of the invasion was no coincidence and Plaintiff rightly has attempted to highlight the connections among the three incidents in order that the war in Ukraine be fully understood.   Full understanding of the war would greatly aid peaceful resolution and Plaintiff has done a significant service to the world in raising these

important issues of public concern.

16. In discussing the three incidents with persons known to Plaintiff, Plaintiff began to suspect that his biological father may not have been Andrew Neale Pierce.    Further research into modern genetics literature revealed that it is exceedingly unlikely the two siblings raised with Plaintiff (who resemble each other closely and Plaintiff not at all) are full-blooded biological siblings of Plaintiff.

17. Among others Plaintiff rightfully contacted regarding the connection among the three incidents was the woman to whom the photograph was sent by the Russian citizens. Though certain family members of Plaintiff and the woman as well as other men and women may not have pleased that Plaintiff was contacting the woman regarding this critically important matter to the world, Plaintiff's efforts to contact the woman could not be seen even as inappropriate in view of the length and depth of the relationship between Plaintiff and the woman which included e.g., the woman writing a message to Plaintiff on the night of September 24, 2009 "My couch. wine. grays. Perfect."

18. The prevailing American perspective on the war in Ukraine has been largely oversimplistic and one-sided.    Having been victimized by Russian operations as described, Plaintiff's view is more nuanced in hoping for a peaceful resolution.    This does not win any popularity contests for Plaintiff including with the Defendants who sought to silence Plaintiff in order to advance their own personal and financial interests. On top, the investigation into the identities of the biological parents of Plaintiff and Plaintiff's siblings greatly upset the Defendants who sought to halt it by any means notwithstanding Plaintiff's right to conduct it.

COMPLAINT

19. Defendants sought to induce Plaintiff to travel to the United States where Defendants intended to kidnap Plaintiff in order to assure Plaintiff's silence.   Plaintiff was highly reluctant to do so and did not want to leave the aircraft for fear of violence against him. Defendant Thomas Madigan Pierce was the ringleader of the kidnapping conspiracy and used the assets of H.M. Payson & Co. of which he was Chairman of the Board to deceive Plaintiff into thinking Plaintiff would receive hard currency at a time when Japanese intelligence services were manipulating Plaintiff's financial accounts.

20.  Plaintiff arrived at the Residence Inn in Manhattan Beach, California and entered a room where Plaintiff calmly explained the foregoing stories which Plaintiff believes to be entirely true.   At the conclusion of the explanation, Plaintiff sought to leave the room and return to his home in Japan with or without the hard currency.   At that time, Defendants' co-conspirators locked the door of the hotel room to block all exits and began physically assaulting Plaintiff.

21. Plaintiff was able to use the hotel phone to scream out that he was being falsely imprisoned and assaulted.   An individual in the hotel room who was not part of the kidnapping conspiracy managed to get the co-conspirators to leave the room for long enough for Plaintiff to walk out the door.   Once Plaintiff exited the door, Defendant Andrew Neale Pierce emerged and began physically assaulting and physical restraining Plaintiff from exiting the premises of the hotel.

22. Plaintiff begged for the local police to be called.   Plaintiff continued to be physically assaulted and physically restrained from exiting the premises of the hotel while the local police were en route.   Three Manhattan Beach Police Department officers arrived and

COMPLAINT

rescued Plaintiff from the ongoing assault and kidnapping.   Defendants continued their

attempts to wrongfully have Plaintiff imprisoned however the police officers on scene

were highly intelligent, courteous and professional rejecting the false allegations of drug

use and mental illness.   Plaintiff has rarely drinks alcohol, has never done drugs other

than marijuana, and in the days leading up to the kidnapping did not use any alcohol or

marijuana.   Plaintiff does not suffer from any mental health condition; it is merely that

some do not like the ideas Plaintiff has and the statements Plaintiff has made.

23. Further documentation of this incident can be provided by the police department.

## COUNT 1:
### FALSE IMPRISONMENT & CONSPIRACY TO COMMIT FALSE IMPRISONMENT

24. Plaintiff was willfully detained in the bounded area of the hotel room at the Residence

Inn by the Defendants and the co-conspirators who had been hired and instructed by the

Defendants in many overt acts in furtherance of the conspiracy to falsely imprison the

Plaintiff.

25. Plaintiff did not consent in any way and vigorously protested his false imprisonment; he

had calmly explained the above issues however once the door was locked and blocked by

co-conspirators Plaintiff needed to scream to save himself from the false imprisonment

and assault.

26. There was no authority whatsoever of lawful arrest as Plaintiff had committed no crimes

but rather had only engaged in protected First Amendment expression,

COMPLAINT

## COUNT 2:

### KIDNAPPING & CONSPIRACY TO COMMIT KIDNAPPING

27. Plaintiff was restrained in a manner that restricted his freedom of movement as Plaintiff sought to exit the hotel premises and return to Japan.   Plaintiff was moved by physical restrain across areas of the hotel premises to which he did not wish to go.

28. The Defendants and each of them organized, hired, and trained co-conspirators to restrain Plaintiff to restrict his freedom of movement.

29. Among the overt actions taken to induce Plaintiff to travel to the location where the kidnapping conspiracy took place, Defendant Thomas Madigan Pierce repeatedly used the e-mail account belonging to Defendant H.M. Payson & Company, tmp@hmpayson.com, to send Plaintiff airline tickets and other inducements to travel to the Residence Inn.

30. Without the courageous and timely response of the Manhattan Beach Police, Plaintiff would have been taken to another, undisclosed location without his consent according to the plan of the Defendant conspirators.

31. Plaintiff was forced to buy his own return airline ticket to Japan and incur substantial expenses related to the COVID-19 pandemic entry requirements in Japan.   Plaintiff was not given any currency or other monetary compensation whatsoever as had been promised.

32. Plaintiff was never paid for patent law work completed and judged to be of excellent

COMPLAINT

quality by Sughrue Mion due to the actions of the Defendants in furthering the kidnapping conspiracy.   Plaintiff lost the employment relationship with Sughrue Mion as a result of the kidnapping conspiracy and is continuing to suffer from extreme economic harm as a result of the kidnapping conspiracy.

## COUNT 3:
### BATTERY & CONSPIRACY TO COMMIT BATTERY

33. Defendants and their co-conspirators repeatedly touched Plaintiff's body in a harmful, offensive, and terrifying manner in carrying out the false imprisonment and kidnapping conspiracies.

34. Plaintiff is 35 years old and even if the Defendants had lawful justification for detaining Plaintiff due a family relationship (which they absolutely did not), there was zero justification for the physical pounding delivered Plaintiff during these incidents.

35. This was a heinous and despicable effort by the Defendants to take the law as they perhaps imagine it should be into their own hands.   This type of vigilante justice can never be tolerated in a free society.   The Defendants may believe themselves to belong to a prominent family, but that does not excuse visiting the grave physical, emotional, and economic harms on the Plaintiff described in this case.

## PRAYER FOR RELIEF

COMPLAINT

WHEREFORE, PLAINTIFF RESPECTFULLY PRAYS THAT JUDGMENT FOR

EACH VIOLATION BE ENTERED AGAINST THE DEFENDANTS, JOINTLY AND

SEVERALLY, FOR:

1. Compensatory damages;

2. Other actual damages, incidental damages, and consequential damages as will be proved
   at trial against each of the Defendants, jointly and severally;

3. Interest on all sums;

4. Special damages as permitted by law;

5. Punitive damages as will be proven at trial against each of the Defendants, jointly and
   severally;

6. Court costs and expenses;

7. Any and all such other relief as the Court may deem just and proper.


**JURY TRIAL DEMANDED**


Dated: March 7, 2022

Respectfully submitted,

__/s/ Samuel Pierce__
Samuel Pierce
*Plaintiff in pro per*

COMPLAINT